UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HOK CHIN, ET AL.

                    Plaintiffs,

          - against –                    18-cv-10734 (JGK)

UNITED RESTAURANT GROUP, INC., ET        MEMORANDUM OPINION
AL.,                                     AND ORDER

                    Defendants.

JOHN G. KOELTL, District Judge:

        The plaintiffs, Hok Chin, Hao Li, Filadelfo Herrera, Aiqing
Li, and Lianbo Li, bring this action against the defendants, a
restaurant holding company, restaurants, and purported owners
and corporate officers of the restaurants.  The plaintiffs
allege claims under the Fair Labor Standards Act ("FLSA"), 29
U.S.C. §§ 201 et seq., and New York Labor Law ("NYLL") §§ 191 et
seq., for unpaid overtime pay, spread-of-hours pay, liquidated
damages, statutory damages, prejudgment interest, and attorney's
fees and costs.  The plaintiffs move for summary judgment
against all defendants pursuant to Federal Rule of Civil
Procedure 56.  Only two defendants have opposed the motion for
summary judgment, Qifan Li and Qifan, LLC (the "Qifan
Defendants").  For the reasons that follow, the plaintiffs'
motion is **denied** as to the Qifan Defendants and **granted** as to
all other defendants.

I.

The following facts are taken from the Local Civil Rule 56.1 Statements submitted by the plaintiffs and the Qifan Defendants, and the plaintiffs' declaration and exhibits. Unless otherwise noted, the following facts are undisputed.[1]

The plaintiffs, Hok Chin, Hao Li, Filadelfo Herrera, Aiqing Li, and Jianbo Li, bring this action against defendants United Restaurant Group, Inc. ("URGI"); R & M Century, Inc., doing business as Shanghai Cuisine; Dumpling 516 Hudson NY, Inc., doing business as Benedicts; Kin Asian Bistro Inc., doing business as Carma East; Bada Garden LLC, doing business as Carma Asian Tapas and Lumos West; Dumpling 2 Avenue Inc., doing business as Lumos Kitchen and Hot Pot Central; Christian Vega; Christina Cherniawsky; Chen Wen Ho, also known as Jonathan Ho; Qifan, LLC, doing business as Lumos; and Qifan Li.  The case has been dismissed against Sergei Bezrukov pursuant to Federal Rule Civil Procedure 41(a)(1)(A)(i).  ECF. No. 119.

---

[1] Apart from the Qifan Defendants, the remaining defendants have not submitted a Local Civil Rule 56.1 Statement.  "A district court has broad discretion to determine whether to overlook a party's failure" to file a Local Rule 56.1 Statement and is "not required to consider what the parties fail to point out in their Local Rule 56.1 [S]tatements."  Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001).  Nonetheless, the Court in its discretion will "conduct an assiduous review of the record even where one of the parties has failed to file such a statement."  Id.  Moreover, the Court must assure itself that any statements in a Rule 56.1 Statement are supported by the record.  Id. at 74.

## A. Defendants

URGI is a restaurant holding company operating multiple restaurants in New York City, including R & M Century, Inc., doing business as Shanghai Cuisine; Dumpling 516 Hudson NY, Inc., doing business as Benedicts; Kin Asian Bistro Inc., doing business as Carma East; Bada Garden LLC, doing business as Carma Asian Tapas and Lumos West; and Dumpling 2 Avenue Inc., doing business as Lumos Kitchen and Hot Pot Central. Plaintiffs' Local Civil Rule 56.1 Statement ("Pls.' 56.1 Stmt.") ¶¶ 12, 22. URGI's subsidiaries are restaurants at which the plaintiffs worked.  The plaintiffs assert that URGI also owned and operated Qifan, LLC, but the Qifan Defendants assert that Qifan, LLC was owned by Qifan Li and Christian Vega, not URGI.  Id.; Qifan Li and Qifan, LLC Local Civil Rule 56.1 Stmt. ("Qifan Defs.' 56.1 Stmt.") ¶ 22.

Christian A. Vega is the "principal and majority shareholder" of URGI.  Pls.' 56.1 Stmt. ¶ 23.  Vega interviewed, hired, fired, and transferred employees of URGI and exercised control over URGI's payroll.  Id. ¶¶ 24-26.  Vega participated in "partners' meetings" for URGI.  Id. ¶ 27.

Christina Cherniawsky is a shareholder in charge of Human Resources for URGI.  Id. ¶ 45.  Cherniawsky had the authority to interview, hire, and fire employees.  Id. ¶ 46.  Cherniawsky participated in "partners' meetings" for URGI.  Id. ¶ 47.

3

Chen Wen Ho, also known as Jonathan Ho, is a "principal and shareholder" of URGI.  Id. ¶ 36.  Ho had authority to interview, hire, fire, and transfer employees.  Id. ¶¶ 37-38.  Ho participated in "partners' meetings" for URGI.  Id. ¶ 39.  Ho is listed as the principal on liquor licenses for several restaurants owned by URGI.  Id. ¶¶ 40-44.

Qifan Li is the Chief Operating Officer and a shareholder of URGI.  Id. ¶ 29.  Qifan Li interviewed candidates for employment and the plaintiffs allege that Qifan Li had authority to hire, fire, and transfer employees.  Id. ¶¶ 30, 33.  The Qifan Defendants assert that hiring, firing, and transfer decisions were made only by consensus among several individuals.  Qifan Defs.' 56.1 Stmt. ¶¶ 30, 33.  The plaintiffs assert that Qifan Li decided or approved employee wages, distributed payroll checks, and was the signatory on the company bank account, but the Qifan Defendants assert decisions about wages were made by the Human Resources department of URGI.  Pls.' 56.1 Stmt. ¶ 31; Qifan Defs.' 56.1 Stmt. ¶ 31.  Qifan Li was also aware of daily work schedules, employee names, rates of pay, and employee names.  Pls.' 56.1 Stmt. ¶ 32.  In addition, Qifan Li participated in "partners' meetings" for URGI.  Id. ¶ 34.  Qifan Li is listed as the principal of Qifan, LLC, doing business as Lumos, on its liquor license.  Id. ¶ 35.

## B. Plaintiffs

Hok Chin worked for URGI as a corporate chef overseeing all of URGI's restaurants.  Id. ¶ 48.  The plaintiffs assert that Qifan Li interviewed Chen for the job, and Chen reported to Qifan Li on a daily basis, which the Qifan Defendants dispute. Id. ¶ 49; Qifan Defs.' 56.1 Stmt. ¶ 49.  Chin typically worked from 10:00 a.m. to 10:00 p.m. daily with a break from 3:00 p.m. to 5:00 p.m., and he made $115,000 per year.  Pls.' 56.1 Stmt. ¶¶ 50-51.  Chin was paid bi-weekly, initially from Vega's personal checks, and then by checks from URGI.  Id. ¶ 51.  The plaintiffs assert that the defendants did not require Chin to log his hours, and that the defendants did not provide him a Wage Notice or Wage Statements.  Id. ¶ 52.  The Qifan Defendants allege that all employees were provided a Wage Notice and Wage Statements, and that all employees were required to log time every day with a system called TOAST.  Qifan Defs.' 56.1 Stmt. ¶ 52.  However, the defendants have not produced time records disputing Chin's recollection of his hours.  Chin has not received his wages from August 6, 2018 until the end of his employment on August 31, 2018.  Pls.' 56.1 Stmt. ¶ 53.

Filadelfo Herrera was employed by the defendants as a line cook from about January 20, 2018 until about August 15, 2018. Id. ¶ 54.  From the beginning of his employment until about June 2018, Herrera worked at Benedicts for six days per week,

typically 48 hours per week, and he was paid a fixed salary of $800 per week. Id. ¶¶ 55-56. He was originally paid in cash and then later in payroll checks from URGI. Id. ¶ 56. He was never paid overtime. Id. Herrera's payroll check dated May 16, 2018 bounced and Herrera needed to pay a bank fee, but the defendants never reimbursed him for that fee. Id. ¶ 57. From about June 2018 to about July 2018, Herrera worked at Shanghai Cuisine, for which he was paid $800 per week but did not receive overtime pay. Id. ¶ 58. At Shanghai Cuisine, Herrera worked about 8 hours per day, six days per week. Id. ¶ 59. From about July 2018 to about August 15, 2018, Herrera worked at Lumos Kitchen. Id. ¶ 60. At Lumos Kitchen, Herrera worked six days a week, for about 48 hours a week, with a fixed salary of $800 per week, but Herrera was never paid overtime. Id. ¶¶ 60-61. The plaintiffs assert that the defendants did not require Herrera to log his hours, and that the defendants did not provide him with a Wage Notice or Wage Statements. Id. ¶ 63. The Qifan Defendants allege that all employees were provided a Wage Notice and Wage Statements, and that all employees were required to log time every day with a system called TOAST. Qifan Defs.' 56.1 Stmt. ¶ 63. However, the defendants have not produced time records disputing Herrera's recollection of his hours. The defendants have not paid Herrera for his final week of work. Pls.' 56.1 Stmt. ¶ 64.

Hao Li worked as an assistant for the defendants and worked
at several of URGI's restaurants.  Id. ¶¶ 65-67.  She was paid
bi-weekly at a rate of $43,200 per year, and her payment was
from URGI, with checks signed by Vega.  Id. ¶ 65.  Hao Li worked
seven days a week, typically about 66 hours, including at-home
work, but the defendants did not pay her overtime.  Id. ¶ 69.
Hao Li sometimes needed to replenish the defendants' cash
registers with her own cash, and the defendants still owe her
$202.97 for such payments.  Id. ¶ 68.  Hao Li never received her
last payment for the period from August 7, 2018 to August 20,
2018.  Id. ¶ 71.  The plaintiffs assert that the defendants did
not require Hao Li to track her hours, and that the defendants
did not provide Hao Li with a Wage Notice or Wage Statements.
Id. ¶ 70.  The Qifan Defendants allege that all employees were
provided a Wage Notice and Wage Statements, and that all
employees were required to log time every day with a system
called TOAST.  Qifan Defs.' 56.1 Stmt. ¶ 70.  However, the
defendants have not produced time records disputing Hao Li's
recollection of her hours.

Aiqing Li worked as a pastry preparer for the defendants
from about September 30, 2016 until about August 22, 2018.  Pls.
56.1 Stmt. ¶ 72.  From about September 30, 2016 until about
April 2018, Aiqing Li worked at Carma East for six days per week
for about 48 hours per week.  Id. ¶ 73.  During this time,

Aiqing Li was paid $3,500 per month, paid twice per month, but she was never paid overtime. Id. ¶ 74. From about April 2018 to about August 22, 2018, Aiqing Li worked at Lumos Kitchen for six days per week for about 48 hours per week. Id. ¶ 75. During this time, Aiqing Li was paid $1,596 on a bi-weekly basis, but she was never paid overtime. Id. ¶ 76. The plaintiffs assert that the defendants did not require Aiqing Li to log her time, and that the defendants did not provide her a Wage Notice or Wage Statements. Id. ¶ 79. The Qifan Defendants allege that all employees were provided a Wage Notice and Wage Statements, and that all employees were required to log time every day with a system called TOAST. Qifan Defs.' 56.1 Stmt. ¶ 79. However, the defendants have not produced time records disputing Aiqing Li's recollection of her hours. The defendants have not provided Aiqing Li her wages for the last two weeks of her employment, totaling $1,596, and they also did not provide her with a payroll check from August 2018 for $680. Pls.' 56.1 Stmt. ¶ 80.

Jianbo Li worked for defendants from about March 1, 2014 to about August 29, 2018 as a cook at Lumos Kitchen, The Gentry, and Shanghai Cuisine. Id. ¶ 81. From about March 1, 2014 to about March 27, 2018, Jianbo Li worked for about 6 days per week averaging 30 hours per week for the first couple of months, and then for about 36 hours per week thereafter. Id. ¶ 82. After

September 30, 2016, Jianbo Li began working about 65 hours per
week.  Id.  During his first year employed by the defendants,
Jianbo Li was paid $3,000 per month, which increased to $3,400
per month during his second year of employment.  Id. ¶¶ 84-85.
From about May 2017 onward, the plaintiffs assert, and the Qifan
Defendants dispute without producing evidence, that Jianbo Li
was paid $3,500 per month.  Id. ¶ 86; Qifan Defs.' 56.1 Stmt.
¶ 88.  From about April 2018 to August 29, 2018, Jianbo Li
worked about 10 hours per day, six days per week.  Pls.' 56.1
Stmt. ¶ 89.  The plaintiffs assert that the defendants did not
require Jianbo Li to track his hours, and that he was not given
overtime or spread-of-hours pay, or provided with a Wage Notice
or Wage Statements.  Id. ¶¶ 91-92.  The Qifan Defendants allege
that all employees were provided a Wage Notice and Wage
Statements, and that all employees were required to log time
every day with a system called TOAST.  Qifan Defs.' 56.1 Stmt.
¶ 91.  However, the defendants have not produced time records
disputing Jianbo Li's recollection of his hours.  Jainbo Li's
payroll check for the period between July 23, 2018 and August 5,
2018 for $1,200 was returned for insufficient funds, and the
defendants never paid him for that period.  Pls.' 56.1 Stmt.
¶ 93.  Jianbo Li never received a payroll check of $1,200 for
the period between August 6, 2018 and August 19, 2018.  Id.

¶ 94.   Jianbo Li also never received payment for his employment period between August 20, 2018 to August 29, 2018.   Id. ¶ 95.

## C. Procedural History

The plaintiffs filed the amended complaint on March 11, 2019.   ECF No. 78.   Defendants Christian Vega, Sergei Bezrukov, Christina Cherniawsky, Bada Garden, LLC, Dumpling 516 Hudson NY Inc., Kin Asian Bistro Inc., R & M Century Inc., and URGI filed an answer on March 26, 2019.   ECF No. 80.   Qifan Li and Qifan, LLC moved to dismiss the amended complaint, ECF No. 82, and that motion was denied in a Memorandum Opinion and Order dated July 9, 2019.   Chin v. United Rest. Grp., Inc., No. 18-cv-10734, 2019 WL 3003995 (S.D.N.Y. July 9, 2019).   The plaintiffs received a Clerk's Certificate of Default against defendant Ho on September 27, 2019.   ECF No. 111. Dumpling 2 Avenue, Inc. has not responded to the amended complaint and the plaintiffs have not sought a Certificate of Default against it.   Defendant Bezrukov was voluntarily dismissed pursuant to Rule 41(a)(1)(A)(i) on November 21, 2019.   ECF No. 119.   The plaintiffs then filed the present motion for summary judgment against the remaining defendants on January 31, 2021.   ECF No. 136.   Only the Qifan Defendants have responded to the motion.

## II.

The standard for granting summary judgment is well established.   "The court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).[2]  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.  The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all internal citations, emphasis, omissions, quotation marks, and footnotes in quoted text.

(citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)
(per curiam)); see also Gallo, 22 F.3d at 1223.   Summary
judgment is improper if any evidence in the record from any
source would enable a reasonable inference to be drawn in favor
of the nonmoving party.   See Chambers v. TRM Copy Ctrs. Corp.,
43 F.3d 29, 37 (2d Cir. 1994).   If the moving party meets its
burden, the nonmoving party must produce evidence in the record
showing the existence of a genuine issue of material fact and
"may not rely simply on conclusory statements or on contentions
that the affidavits supporting the motion are not credible."
Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir.
1993).   "Even unopposed motions for summary judgment must fail
where the undisputed facts fail to show that the moving party is
entitled to judgment as a matter of law." D.H. Blair & Co. v.
Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006).

### III.

The plaintiffs move for summary judgment against all
defendants on the plaintiffs' claims for failure to pay overtime
pursuant to the FLSA and the NYLL, failure to provide spread-of-
hours pay pursuant to the NYLL, and failure to provide Wage
Notices and Wage Statements pursuant to the NYLL.

### A. Liability

The plaintiffs have demonstrated that they are covered
employees under the FLSA, and that, with the exception of Qifan

12

Li and Qifan, LLC, the defendants were the plaintiffs'
employers, within the meaning of the FLSA and the NYLL.  The
plaintiffs similarly have demonstrated that the defendants, with
the exception of Qifan Li and Qifan, LLC, are liable to the
plaintiffs for unpaid overtime wages, spread-of-hours pay,
liquidated damages, and prejudgment interest.

### 1. Coverage Under the FLSA

Employees seeking damages pursuant to the FLSA must
demonstrate that they are covered employees under the FLSA.
Because the FLSA was enacted to "correct" and "eliminate"
certain "labor conditions detrimental to the maintenance of the
minimum standard of living necessary for health, efficiency, and
general well-being of workers," 29 U.S.C. § 202, courts construe
the statute "liberally to apply to the furthest reaches
consistent with congressional direction."  Jacobs v. N.Y.
Foundling Hosp., 577 F.3d 93, 97 n.2 (2d Cir. 2009) (per
curiam).  Employees qualify for the FLSA's protections if:
(1) in any workweek the employee is "engaged in commerce or in
the production of goods for commerce," 29 U.S.C. § 206
(individual coverage), or (2) the employee "is employed in an
enterprise engaged in commerce or in the production of goods for
commerce," id. § 207(a) (enterprise coverage).

All employees of a business are covered under an enterprise
theory if the defendant business (1) "has employees engaged in

13

commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person"; and (2) "is an enterprise whose annual gross volume of sales made or business done is not less than $500,000." Id. § 203(s)(1)(A).

In this case, all of the plaintiffs are engaged in commerce or in the production of goods for commerce because they work in restaurants, buy, sell, and prepare food. While it is possible that URGI is an enterprise such that all of URGI's employees are covered by the FLSA, the plaintiffs have not pleaded or presented evidence that URGI's annual gross volume of sales is at least $500,000. Therefore, for the purposes of establishing coverage under the FLSA, the plaintiffs cannot rely on an enterprise theory of coverage. However, each of the plaintiffs has established FLSA coverage on an individual theory of coverage because each plaintiff engages in commerce or in the production of goods in commerce in their employment by the defendants. The defendants have not disputed that the plaintiffs are covered under the FLSA. Accordingly, the plaintiffs must next show that the defendants were the plaintiffs' "employers" pursuant to the FLSA and NYLL.

## 2. "Employers" Under the FLSA and NYLL

Once FLSA coverage is established, liability under the FLSA extends to any "employer" that violates a provision of the FLSA 29 U.S.C. § 216(b); see Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999). NYLL liability likewise extends to "employers" who violate the requirements of the NYLL.[3] The FLSA, and by analogy the NYLL, defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "An entity employs an individual under the FLSA if it suffers or permits that individual to work," such that "as a matter of economic reality, the entity functions as the individual's employer." Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d Cir. 2003). This is "the broadest definition of employ that has ever been included in any one act and it encompasses working relationships, which prior to the FLSA, were not deemed to fall within an employer-employee category." Id. at 69. "The regulations promulgated under the FLSA expressly recognize that a worker may be employed by more than one entity at the same time." Id. at 66. Therefore, an entity that does not formally

---

[3] The New York Court of Appeals has not yet answered the question of whether the test for "employer" status is the same under the FLSA and the NYLL, see Irizarry v. Catsimatidis, 722 F.3d 99, 117 (2d Cir. 2013), but courts in the Second Circuit have generally assumed that it is. See Camara v. Kenner, No. 16-cv-7078, 2018 WL 1596195, at *7 (S.D.N.Y. Mar. 29, 2018); Sethi v. Narod, 974 F. Supp. 2d 162, 188-89 (E.D.N.Y. 2013).

15

employ an individual may nevertheless be subject to joint and several liability under the FLSA as a "joint employer." See 29 C.F.R. § 791.2(f) ("For each workweek that a person is a joint employer of an employee, that joint employer is jointly and severally liable with the employer and any other joint employers for compliance with all of the applicable provisions of the Act, including the overtime provisions, for all of the hours worked by the employee in that workweek.").

The Second Circuit Court of Appeals has described the question of employment for FLSA purposes as "a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 141-42 (2d Cir. 2008). To determine whether an entity is an "employer" for purposes of the FLSA and NYLL, courts in this circuit have relied on "a nonexclusive and overlapping set of factors," in which courts are directed: "(1) to examine the degree of formal control exercised over a worker; (2) to distinguish between independent contractors and employees; and (3) to assess whether an entity that lacked formal control nevertheless exercised functional control over a worker." Id. at 143; see also Irizarry v. Catsimatidis, 722 F.3d 99, 105 (2d Cir. 2013). Therefore, an employment relationship may arise as a result of formal or

functional control exercised over a worker.   Barfield, 537 F.3d at 142-3.

The plaintiffs make two arguments as to why all of the defendants should be considered the plaintiffs' employers.   The plaintiffs first assert that under the totality of the circumstances, the defendants are joint employers of the plaintiffs because the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in "economic reality rather than technical concepts." Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33 (1961).

The plaintiffs next assert that the defendants constituted a single integrated enterprise such that each defendant can be considered a joint employer of each of the plaintiffs.   The single integrated enterprise rule holds multiple legally distinct entities liable as a single employer when the entities are a single integrated enterprise, as in the case of "parent and wholly-owned subsidiary corporations, or separate corporations under common ownership and management." Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193, 198 (2d Cir. 2005) (describing the single integrated enterprise rule in the Title VII context).   The Second Circuit Court of Appeals has yet to apply the single integrated enterprise rule in the FLSA context. However, district courts in this District have applied the single integrated enterprise rule in the FLSA context.   See,

e.g., Morales v. Anyelisa Rest. Corp., No. 18-cv-7641, 2019 WL
3430106, at *2 (S.D.N.Y. July 30, 2019); Flores v. 201 W. 103
Corp., 256 F. Supp. 3d 433, 440-41 (S.D.N.Y. 2017); Li v. Ichiro
Sushi, Inc., No. 14-cv-10242, 2016 WL 1271068, at *6 (S.D.N.Y.
Mar. 29, 2016); Cordova v. SCCF, Inc., No. 13-cv-5665, 2014 WL
3512838, at *3 (S.D.N.Y. July 16, 2014); Lopez v. Pio Pio NYC,
Inc., No. 13-cv-4490, 2014 WL 1979930, at *3-4 (S.D.N.Y. May 15,
2014).[4]  Whether a group of entities qualifies as a single
integrated enterprise turns on four-factors: "(1) interrelation
of operations, (2) centralized control of labor relations,
(3) common management, and (4) common ownership or financial
control." Brown v. Daikin Am. Inc., 756 F.3d 219, 226 (2d Cir.
2014) (Title VII standard).  Although no one factor is
dispositive, "control of labor relations is the central
concern." Id. at 227.

    In this case, the plaintiffs have shown that all
defendants, apart from Qifan Li and Qifan, LLC, were the
plaintiffs' joint employers under the traditional totality of
the circumstances test and under the single integrated

---

[4] Other district courts in this Circuit have declined to apply the formal
single integrated enterprise doctrine in the FLSA context and have instead
used the traditional totality of the circumstances test to determine whether
multiple legal entities constitute a single employer for FLSA purposes.  See,
e.g., Olvera v. Bareburger Grp. LLC, 73 F. Supp. 3d 201, 205-06 (S.D.N.Y.
2014); Hart v. Rick's Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 939-40 & n.16
(S.D.N.Y. 2013); Gorey v. Manheim Servs. Corp., 788 F. Supp. 2d 200, 210
(S.D.N.Y. 2011).

enterprise theory.  URGI had operational control over the plaintiffs, including hiring, firing, and transferring decisions as well as payment.  URGI's subsidiaries exercised day-to-day control over the plaintiffs, including control of scheduling and daily job duties.  URGI is a restaurant holding company for its subsidiary-restaurants, and the plaintiffs have shown that URGI acted as a centralized, common operation with common ownership and management over its subsidiary restaurants. See Brown, 756 F.3d at 226; Arculeo, 425 F.3d at 198.

Vega, Cherniawsky, and Ho were shareholders and principals of URGI who exercised control over the plaintiffs.  "[I]n the individual-liability context, . . . the remedial nature of the FLSA warrants an expansive interpretation of its provisions so that they will have the widest possible impact in the national economy."  Irizarry, 722 F.3d at 110.  For individual liability to attach, the FLSA does not "require[] an individual to have been personally complicit in FLSA violations."  Id.  Rather, "evidence showing an individual's authority over management, supervision, and oversight of a company's affairs in general is relevant to the totality of the circumstances in determining the individual's operational control of the company's employment of the plaintiff employees."  Id.  "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or

conditions of the employees' employment." Id.  In this case,
the plaintiffs have submitted undisputed deposition testimony
that Vega, Cherniawsky, and Ho exercised operational control
over the plaintiffs with respect to hiring, firing,
transferring, paying, and scheduling, and therefore, they are
properly considered the plaintiffs' "employers."

Apart from Qifan Li and Qifan, LLC, the remaining
defendants have not contested any of the plaintiffs' assertions,
and therefore, there is no dispute of material fact that all of
the defendants, apart from the Qifan Defendants, were the
plaintiffs' employers.

On the other hand, the Qifan Defendants have disputed that
they are "employers" of the plaintiffs pursuant to the FLSA and
NYLL.  According to Qifan Li and Qifan, LLC, URGI never owned
any interest in Qifan, LLC.  Qifan, LLC, in turn, owned multiple
restaurants, but none of the events at issue in this case
occurred at any restaurant owned by Qifan, LLC.  Qifan Li had a
minimal ownership interest in URGI, but she testified in her
deposition that she did not have unilateral authority to hire or
fire employees, set wages, issue checks, or any other unilateral
authority over the plaintiffs.  Bingchen Li Decl., Ex. 4, Qifan
Li Tr. at 18-19, 25, 172.  Given the dispute of material facts
with respect to Qifan Li and Qifan, LLC regarding their
authority over the plaintiffs and their status as employers, the

plaintiffs' motion for summary judgment is denied solely as to Qifan Li and Qifan, LLC because the Court cannot determine as a matter of law whether Qifan Li and Qifan, LLC were the plaintiffs' employers. Barfield, 537 F.3d at 142-44 (2d Cir. 2008) (noting that, because of the fact-intensive nature of the inquiry, courts are "rarely" able to make determinations about joint employment on a motion for summary judgment). However, there is no dispute of material fact that the other defendants were the plaintiffs' employers.

### 3. The Plaintiffs' Wage Claims

The plaintiffs allege that, pursuant to the FLSA and NYLL, the defendants are liable for unpaid overtime wages, spread-of-hours pay, statutory damages for failure to provide Wage Notices and Wage Statements,[5] and liquidated damages.

The FLSA requires covered employers who meet certain conditions to provide overtime pay for work that exceeds forty hours per week. See 29 U.S.C. § 207(a). Specifically, the FLSA requires that employees must be compensated "at a rate not less than one and one-half times the regular rate at which [they are]

---

[5] The New York Wage Theft Prevention Act provides for statutory damages for failing to provide employees with a Wage Notice or Wage Statements. NYLL § 195. While the plaintiffs assert that they were never provided a Wage Notice or Wage Statemenst, Qifan Li testified in her deposition that all employees were given Wage Notices and Wage Statements. See Bingchen Li Decl., Ex. 4, Qifan Li Tr. at 20. Accordingly, there is a dispute of material fact as to the Wage Notice and Wage Statement claims, and the motion summary judgment on that claim is therefore denied.

employed" for every hour worked in excess of forty in a given workweek. 29 U.S.C. § 207(a)(1); see also Hypolite v. Health Care Servs. of N.Y. Inc., 256 F. Supp. 3d 485, 491 (S.D.N.Y. 2017). The NYLL contains the same rule. Inclan v. N.Y. Hosp. Grp., Inc., 95 F. Supp. 3d 490, 498-99 (S.D.N.Y. 2015) (citing N.Y. Comp. Codes R. & Regs. tit. 12. § 146-1.4). New York's labor regulations provide that "[a]n employer shall pay an employee, except a janitor in a residential building, for overtime at a wage rate of 1 1/2 times the employee's regular rate for hours worked in excess of 40 hours in a workweek." N.Y. Comp. Codes R. & Regs. tit. 12, § 141-1.4.

Additionally, pursuant to the NYLL, the plaintiffs "are entitled to an additional hour's pay at the basic minimum hourly wage rate for any day in which the spread of hours—defined as the interval between the beginning and end of an employee's workday—exceeds 10 hours." Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 339 (S.D.N.Y. 2005); N.Y. Comp. Codes R. & Regs. tit. 12, §§ 142-2.4, 142-2.18.

The plaintiffs have alleged that they have not been paid overtime wages and that certain plaintiffs have not been provided spread-of-hours pay. The plaintiffs also submitted uncontested deposition testimony to this effect.[6] "It is well-

---

[6] Qifan Li testified that employees were required to log hours through an internal system called TOAST. Bingchen Li Decl., Ex. 4, Qifan Li Tr. at 27. However, the defendants have not produced any TOAST records, and therefore,

settled that when an employer fails to keep adequate records of its employees' compensable work periods, as required under the FLSA, employees seeking recovery for overdue wages will not be penalized due to their employer's record-keeping default." Reich v. S. New England Telecomms. Corp., 121 F.3d 58, 69 (2d Cir. 1997). As in this case, after the plaintiffs have presented uncontested evidence in the form of deposition testimony that "they performed work for which they were not properly compensated and produce[d] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference" the burden shifts to the defendants to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. Id. The defendants have not produced such evidence, and therefore the Court can award damages, "even though the result is only approximate." Id. Accordingly, the plaintiffs have produced sufficient, uncontested evidence in the form of deposition testimony that they are due unpaid overtime and spread-of-hours wages.

Moreover, both the FLSA and NYLL provide for liquidated damages. Under the FLSA, an employer who violates overtime

---

the defendants have not met their burden to show the precise amount of work performed or to contest the reasonableness of the plaintiffs' estimations. See Reich v. S. New Eng. Telecomms. Corp., 121 F.3d 58, 69 (2d Cir. 1997)

provisions of the law is liable for an amount in liquidated damages equal to the amount owed in compensatory damages.  29 U.S.C. § 216(b); Smith v. Nagai, No. 10-cv-8237, 2012 WL 2421740, at *4 ("A defendant found to have violated the FLSA is required to pay the employee an additional amount in liquidated damages equal to the unpaid overtime."), report and recommendation adopted sub nom. Smith v. Saki Rest. Corp., 2012 WL 2428929 (S.D.N.Y. June 27, 2012).  These damages are "not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA."  Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999).  A court "has discretion to reduce or deny this additional penalty if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the FLSA."  Doo Nam Yang, 427 F. Supp. 2d at 340.  The defendants have made no such showing in this case, and it is well settled that "[d]ouble damages are the norm, single damages the exception."  Reich, 121 F.3d at 71.

Similarly, under the NYLL, a prevailing employee is entitled to liquidated damages in the amount of one hundred percent of unpaid overtime accrued after April 9, 2011. NYLL §§ 198(1-a), 663(1); see Garcia v. Giorgio's Brick Oven & Wine Bar,

No. 11-cv-4689, 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012) ("Effective April 9, 2011, Sections 198(1-a) and 663(1) of the NYLL were amended to provide for liquidated damages equal to one-hundred percent of the amounts underpaid."), report and recommendation adopted, 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012). All events at issue in this case occurred after 2011. The NYLL also authorizes liquidated damages for spread-of-hours claims. See, e.g., Hengjin Sun v. China 1221, Inc., No. 12-cv-7135, 2016 WL 1587242, at *4 (S.D.N.Y. Apr. 19, 2016). Unlike the FLSA, liquidated damages under New York law are meant as a penalty to deter willful employer violations. Carter v. Frito-Lay, Inc., 425 N.Y.S.2d 115, 116-17 (App. Div. 1980).

The FLSA and the NYLL are interpreted "as not allowing duplicative liquidated damages for the same course of conduct." Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018). However, plaintiffs are "entitled to recover under the statute that provides the greater relief." Hernandez v. Schloss, No. 1:12-cv-04339, 2020 WL 1228644, at *3 (S.D.N.Y. Mar. 13, 2020). Therefore, for each wage and hours claim, including the spread-of-hours claims under the NYLL, the plaintiffs are entitled to recover liquidated damages in an amount equal to the wages underpaid.

Because there is no dispute of material fact that the plaintiffs are covered employees under the FLSA, that the

defendants, apart from Qifan, LLC and Qifan Li, were employers
of the plaintiffs, and because the plaintiffs have produced
undisputed evidence of FLSA and NYLL violations, the motion for
summary judgment is granted with respect to URGI, Kin Asian
Bistro Inc., Bada Garden, LLC, Dumpling 2 Avenue, Inc., Dumpling
516 Hudson NY, Inc., Christian Vega, Christina Cherniawsky, and
Chen Wen Ho.

### B. Damages

The plaintiffs are entitled to summary judgment against all
defendants apart from the Qifan Defendants for the plaintiffs'
wage and hours claims.  The plaintiffs submitted a calculation
of damages, see Bingchen Li Decl. Ex. 5, which the Court finds
reasonable, with certain alterations described below.
Accordingly, the Court finds that the remaining defendants,
apart from Qifan Li and Qifan, LLC are jointly and severally
liable to the plaintiffs in the following amounts:[7]

Hok Chin

- Wages Owed:        $7,740

- Interest:[8]        $1,741.50

---

[7] The following damages calculations, with the adjustments explained below,
are based on the plaintiffs' undisputed deposition testimony describing their
hours worked.  See Bingchen Li Decl. Ex. 5.
[8] The plaintiffs "may recover [NYLL] prejudgment interest on overtime wages
that were awarded under both the FLSA and New York State law."  Cesario v.
BNI Constr., Inc., No. 07-cv-8545, 2008 WL 5210209, at *6 (S.D.N.Y. Dec. 15,
2008) (collecting cases).  Pursuant to New York law, prejudgment interest
accrues at 9% per year.  N.Y. C.P.L.R. §§ 5001, 5004.  Where damages are
incurred at multiple times, damages "shall be computed upon each item from

- Liquidated Damages: $7,740

---

- Total:                $17,221.50

Jianbo Li

- Wages Owed:           $74,797.83

- Interest:             $21,878.36

- Liquidated Damages: $74,797.83

---

- Total:                $171,474.02[9]

Hao Li

- Wages Owed:           $12,960.48

- Interest:             $2,916.11

- Liquidated Damages: $12,960.48

---

- Total:                $28,837.07

Aiqing Li

- Wages Owed:           $26,201.24

- Interest:             $7,663.86

---

the date it was incurred or upon all of the damages from a single reasonable
intermediate date." Id. § 5001(b).
[9] The plaintiffs' damages calculation sought a total of $171,639.11 for Jianbo
Li in unpaid wages, liquidated damages, and interest.  However, there was a
slight miscalculation in the plaintiffs' statement.  Jianbo Li alleged that
he began making $3,500 per month in May 2017.  Pls.' 56.1 Stmt. ¶ 86.
However, the damages calculation assumed that Jianbo Li began making $3,500
in April 2017.  Bingchen Li Decl. Ex. 5.  The adjusted figures account for
the fact that Jianbo Li allegedly made $3,400 for the month of April 2017.

- Liquidated Damages: $26,201.24

  _____

- Total:              $60,066.34

Filadelfo Herrera

- Wages Owed:         $7,760

- Interest:          $1,920.60

- Liquidated Damages: $7,760

  _____

- Total:             $17,440.60

## CONCLUSION

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed, the arguments are either moot or without merit.  For the foregoing reasons the plaintiffs' motion for summary judgment is granted to the extent described above, but declined as to the request for damages for failure to provide Wage Notices or Wage Statements, as to all remaining defendants except Qifan Li and Qifan, LLC.  The remaining defendants, except for Qifan Li and Qifan, LLC, are jointly and severally liable to the plaintiffs in the amounts described above.

SO ORDERED.

Dated:      New York, New York
            July 20, 2021

                                John G. Koeltl
                        United States District Judge